1 | ROBERT M. YASPAN, SBN 051867
2 | JOSEPH G. McCARTY, SBN 151020
DEBRA R. BRAND, SBN 162285
3 | LAW OFFICES OF ROBERT M. YASPAN
21700 Oxnard Street, Suite 1750
4 | Woodland Hills, California 91367
Telephone:  (818) 905-7711
5 | Facsimile: (818) 501-7711

6 | *[Proposed] General Counsel for Debtor-in-Possession*

7

8 | UNITED STATES BANKRUPTCY COURT

9 | CENTRAL DISTRICT OF CALIFORNIA - RIVERSIDE DIVISION

10

| | |
|---|---|
| IN RE: | ) Chapter No.: 11 |
| | ) |
| BIODATA MEDICAL LABORATORIES, | ) Case No.: 6:16-bk-20446-MW |
| INC. | ) |
| | ) Adv. No.: |
| Debtor | ) |
| | ) COMPLAINT FOR: |
| | ) |
| BIODATA MEDICAL LABORATORIES, | ) 1. DECLARATORY RELIEF; |
| INC. | ) 2. DECLARATORY RELIEF; |
| | ) 3. AVOIDANCE OF PREFERENTIAL |
| Plaintiff. | )     TRANSFERS PURSUANT TO 11 U.S.C |
| | )     SECTION 547; |
| vs. | ) 4. AVOIDANCE OF LIEN AND |
| | )     EQUITABLE SUBORDINATION |
| YELLOWSTONE CAPITAL WEST, LLC ; | )     PURSUANT TO 11 U.S.C SECTION |
| and MERCHANT SOURCE, INC. | )     510(c); |
| | ) 5. AVOIDANCE AND PRESERVATION |
| Defendants. | )     OF CLAIMS PURSUANT TO 11 U.S.C |
| | )     SECTIONS 502, 506, 544, AND 510(c); |
| | ) 6. AVOIDANCE OF FRAUDULENT |
| | )     TRANSFER PURSUANT TO 11 U.S.C |
| | )     SECTION 548 ; |
| | ) 7. AVOIDANCE OF FRAUDULANT |
| | )     TRANSFERS PURSUANT TO 11 U.S.C |
| | )     SECTION 544 AND 548; |
| | ) 8. USURY AND UNJUST |
| | )     ENRICHMENT/DISGORGEMENT; |
| | ) 9. INJUNCTION; |
| | ) 10. DETERMINING EXTENT OF LIENS |
| | )     PURSUANT TO 11 U.S.C SECTION |

|  |  |
|---|---|
| ) | 502, 506  AND 551; |
| ) | 11. DISALLOWANCE OF CLAIM |
| ) | PURSUANT TO 11 U.S.C SECTION |
| ) | 502, 506,  AND 551 ; |
| ) | 12. UNCONSCIONABILITY; |
| ) | 13. VIOLATION OF CALIFORNIA |
| ) | BUSINESS AND PROFESSIONS CODE, |
| ) | SECTION 17200; |
| ) | 14. FRAUD |

Plaintiff BioData Medical Laboratories, Inc., the Chapter 11 debtor and debtor in possession herein (the "Debtor" or "Plaintiff"), alleges as follows:

## **JURISDICTION**

1.      This Court has jurisdiction under 28 U.S.C. sections 157 and 1334(b)  and 11 U.S.C. sections 105 and 506 of the subject matter of Plaintiffs' claims for relief in this adversary proceeding.  The claims for relief arise under Title 11 of the United States Code and are related to Plaintiff's Chapter 11 case pending under Title 11 in the United States Bankruptcy Court for the Central District of California.

2.      This is a core proceeding under 28 U.S.C. section 157(b).  Regardless of whether this is a core proceeding, consent is hereby given for the entry of final orders and judgments by the Bankruptcy Court.

3.      Pursuant to 28 U.S.C. section 1409, venue is proper in the Central District of California because Plaintiff's Chapter 11 Bankruptcy case is pending in this district and division.  The solicitation and execution of the loan agreements at issue herein took place in California.  As set forth below, the loan agreements were 'contracts of adhesion' and Plaintiff

did not have any opportunity to effectively negotiate regarding the terms of the loan agreements. Any alleged "Confession of Judgment" and the usurious nature of the loans at issue are contrary to important public policy of the State of California. Additionally, the fraudulent nature of the loans, the false, misleading, and/or deceptive statements regarding the loans, the omission of material information about the loans, the contradictory documentation, the failure to state and provide for an actual interest rate in the documentation, the other violations of California Finance Lender Law, and the attempt to cast the transaction as a sale or transfer of 'receipts' prevents and/or estoppes Defendant Yellowstone Capital West, LLC ("YCW" or "Yellowstone") from relying on any alleged exemptions from California's usury law. These same wrongful and/or illegal actions constitute unfair competition and render the loans unconscionable and unenforceable under California law.

## PARTIES

4.      Bio-Data Medical Laboratories, Inc. ("Bio-Data" or "Plaintiff") is a California corporation, operating as Debtors-In-Possession under the United States Bankruptcy Code ("Code") with certain powers of a trustee as specified in the Code.

5.      Defendant YCW is a New York limited liability company which, Plaintiff is informed and believes and thereupon alleges, maintains its principal place of business in the State of New York, but does business throughout the State of California, including but not limited to, in the County of Riverside, State of California.

6.      Defendant, Merchant Source, Inc. ("MSI") is a corporation which, Plaintiff is informed and believes and thereupon alleges, maintains its principal place of business in the State of New York, but does business throughout the State of California, including but not limited to, in the County of Riverside, State of California.

7.      On November 28, 2016 (the "Petition Date"), Plaintiff commenced its reorganization by filing a voluntary petition for relief under chapter 11 of title 11 of the United

States Code (the "Bankruptcy Code").

8.    Plaintiff is continuing in possession of its assets and is operating and managing its business as debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

9.    Plaintiff owns and operates a medical testing business that provides medical test services for insurance and government entity health providers with over 18 branches , as of the Petition Date, located in several areas of California.  Prior to 2013, Debtor was profitable and had a positive cash flow.

10.    In or about 2013, Plaintiff fell victim to a series of predatory lenders that used fraudulent, illegal, deceptive, and/or unethical means to defraud and deceive Plaintiff into entering into a series of fraudulent, illegal and usurious loans.  Said predatory lenders tricked Plaintiff into signing fraudulent, false, and misleading documents, thereby causing Plaintiff to enter into unfair and usurious loans which further depleted Plaintiff's financial condition.

11.    YCW is one such predatory lender.  It specializes in providing fast, high interest, loans to troubled businesses and is one of many entities that engage in the making of "cash advance" loans that are sometimes referred to as "merchant cash advances ("MCA").   MSI is also involved in the MCA business and is also a broker and/or lender in the transactions.  YCW and MSI will sometimes hereinafter be referred to collectively as "Defendants").

18.    There are two loans at issue;  issues with these loans are numerous and include, without limitation:

A.    The loan documentation  include 'broad form' security agreements that are vague, ambiguous and unexplained.   The security interests are not documented by UCC-1 filings but instead remain hidden.

B.    The loans are usurious with interest rates ranging into the hundreds of percent on an annual percentage rate ("APR") basis.

C.    There are no TILA and Regulation Z disclosures as required by Federal law.

D.    There are no informational disclosures as required by California law and the loans are false, misleading, and/or deceptive and the lenders omit material information about the loans.

E.    The loan documentation and funding are provided with no real opportunity for review or negotiation – i.e. are contracts of adhesion.

**The YCW Loans**

21.    In or about June 27, 2016, Plaintiff took out its first loan ("First Loan") from Defendants. The sum of $100,000 was lent to Plaintiff and the sum of $145,000 was supposed to be paid back in 100 daily payments of $1,450. It was instead paid back by 45 payments of $1,450 and a final prepayment of $79,750 which was paid by the second loan as set forth below. A true and correct copy of the documentation given by Defendants to Plaintiff is attached as Exhibit 1.

22.    The plaintiff is informed and believes and thereupon alleges that Defendants charged fees and costs in addition to its interest payments that should as well be interpreted as "additional interest."

23.    Approximately five daily payments were made each week of repayment; thus repayment was scheduled over approximately 20 weeks. Assuming that expected repayment schedule this would mean a repayment amount of $7,250 per week. This computes out to an annual percentage rate ("APR") of in excess of 202%. Such APR would be higher if any "additional interest" was added in.

24.    From the inception date of the First Loan to a date one day before the start of the voidable preference period pursuant to 11 USC Section 547, Plaintiff paid approximately 45 payments of $1,450 each, or approximately $65,250. During the voidable preference period

pursuant to 11 USC Section 547, Plaintiff paid off the remaining $79,750. Actually, the loan was completely repaid earlier than it should have been (according to its terms) by the Debtor on or about October 3, 2016 through a payment of $62,350 from the proceeds of the Second Loan (defined below) without any credit for prepayment.

25.    YCW was a claimed unsecured creditor with respect to the First Loan; actually, it did not perfect its claimed security interest because of a failure to file an appropriate Form UCC-1.

26.    Plaintiff and its owners were not represented by counsel at the time the loan documents were executed. They did not understand the documents at the time they were sent to them and they did not have time to review them and/or have an attorney review them. As a result, Plaintiff, its owners, and other alleged third parties entered into alleged guaranties (the "Guaranties"). Additionally, onerous costs, fees and alleged penalties were included with the documents that were not previously discussed, were usurious, and were not in compliance with applicable law.

27.    The loan documents made the payment of the daily specified amounts as an unconditional requirement regardless of whether Plaintiff had recovered receivables sufficient to cover that amount.

28.    In or about October 3, 2016, during the voidable preference period described in 11 USC Section 547, Plaintiff took out its second loan ("Second Loan") from Defendants. The sum of $120,000 was lent to Plaintiff and the sum of $174,000 was to be paid back in 116 daily payments of $1,500. Of this Second Loan only $57,650 was "new value" within the meaning of 11 USC Sections 547(a)(2) and 547(c)(4); the remaining $62,350 merely substituted a new obligation for an existing obligation (i.e., the remaining amount due under the First Loan). A true and correct copy of the documentation relating to the Second Loan given to Plaintiff is attached as Exhibit 2.

29.     The Debtor actually paid back approximately 36 payments of $1,500, or $54,000, prior to the petition date, in connection with the Second Loan.  The amount presently claimed by YCW is therefore still  approximately $120,000 with respect to the Second Loan.

30.     The plaintiff is informed and believes and thereupon alleges that Defendants charged fees and costs in addition to its interest payments that should as well be interpreted as "additional interest."

31.     Approximately five daily payments were made each week of repayment; thus repayment was scheduled over approximately 23.2 weeks.  Assuming that expected repayment schedule this would mean a repayment amount of $7,500 per week.  This computes out to an annual percentage rate ("APR") of in excess of 170%.  Such APR would be higher if any "additional interest" was added in.

32.     YCW was a claimed unsecured creditor with respect to the Second Loan; actually, it did not perfect its claimed security interest because of a failure to file an appropriate Form UCC-1.

33.     Plaintiff and its owners were not represented by counsel at the time the Second Loan documents were executed.  They did not understand the documents at the time they were sent to them and they did not have time to review them and/or have an attorney review them. As a result, Plaintiff, its owners, and other alleged third parties entered into alleged guaranties (the "Guaranties").  Additionally, onerous costs, fees and alleged penalties were included with the documents that were not previously discussed, were usurious, and were not in compliance with applicable law.

34.     The loan documents made the payment of the daily specified amounts as an unconditional requirement regardless of whether Plaintiff had recovered receivables sufficient to cover that amount.

## FIRST CLAIM FOR RELIEF

(Declaratory Relief re Nature of Transaction, Validity, Priority, Amount, and Extent of Lien –
First YCW Loan against Defendants)

35.    Plaintiffs hereby incorporate by reference paragraphs 1 through 34 inclusive, as
if fully set forth herein.

36.    The issues with the First YCW Loan are numerous and include, without
limitation:

A.    Although, the transaction was proposed by Defendants as a loan, the
documentation attempts to picture the transaction as an alleged 'sale' of a portion of a
company's future 'receipts';

B.    There was no transfer of title or transfer of possession to any alleged 'receipts';

C.    The payments are made on a daily basis in the same amount regardless of the
'receipts' or 'proceeds' for that day;

D.    Defendants did not assume any of the ordinary risks of loss that comes with
ownership.

E.    The loan includes an alleged 'broad form' security agreement that is inconsistent
with ownership of any alleged 'receipts;

F.    The loan included an alleged guaranty that is inconsistent with ownership of any
alleged 'receipts;

G.    The loan required Plaintiff to make payments to YCW regardless of the amount
of any alleged 'receipts' and makes the transaction an alleged 'full recourse' loan.

H.    The loan documents use the term loan and are inconsistent with an alleged sale of
'receipts';

I.    The default provision in the loan document makes non-payment a default which
is inconsistent with an alleged sale of 'receipts';

J.    The loan documents do not attempt to separate the alleged portion of the

borrower's 'receipts' or 'proceeds' that supposedly belongs to YCW and there is no separate

bank account for the alleged 'receipts" belonging to YCW;

K.     The loan is usurious under California law and the high costs of the loan caused

the balance transferred to Plaintiff to substantially less than the amount promised;

L.     The fraudulent nature of the loans, the false, misleading, and/or deceptive

statements regarding the loans, the omission of material information about the loans, the

contradictory documentation, the failure to state and provide for an actual interest rate in the

documentation, the other violations of California Finance Lender Law, and the attempt to cast

the transaction as a sale or transfer of 'receipts' prevents and/or estoppes Defendants from

relying on any alleged exemptions from California's usury law;

M.     The loan documentation and funding were provided with no real opportunity for

review or negotiation – i.e. are contracts of adhesion;  and

N.     The business and accounting records of both Plaintiff and YCW treated the

transaction as a loan under the standards of the Financial Accounting Standards Board.

37.     Plaintiff contends that the transaction was actually a loan; that the loan was

usurious under either California law; that the payments under the transactions were avoidable

preferences and/or fraudulent transfers.  Plaintiff further contends that it did not "sell" any

assets to YCW, and that it merely borrowed money from YCW.  Plaintiff finally contends that

YCW is at best an unsecured general creditor of Plaintiff.

38.     Plaintiff is informed and believes that Defendants dispute Plaintiff's contentions

set forth above and Plaintiff desires a judicial determination of its rights and duties and a

declaration as to the nature of the transaction, and the parties' rights and duties thereunder.

39.     A judicial declaration is necessary and appropriate at this time under the

circumstances in order to determine the rights and duties of the parties relating to the First

YCW Loan as follows:

A.      That the agreement entered into between Plaintiffs and Defendants sets forth a loan transaction to which California laws are applicable.

B.      That the First YCW Loan charges a usurious interest rate.

C.      That Plaintiff and YCW entered into a loan transaction and that YCW does not own and has not acquired any alleged 'receipts' and/or or any other personal property from Plaintiff.

D.      That Defendants knowingly charged a usurious rate of interest on the First YCW Loan and entered into the loans with usurious intent.

E.      That the First YCW Loan is usurious per se.

F.      That the First YCW Loan and the payments thereon are avoidable preferences and/or fraudulent transfers under the Bankruptcy Code.

G.      That the fraudulent nature of the First YCW Loan, the false, misleading, and/or deceptive statements regarding the loan, the omission of material information about the loan, the contradictory documentation, the failure to state and provide for an actual interest rate in the documentation, the other violations of California Finance Lender Law, and the attempt to cast the transaction as a sale or transfer of 'receipts' prevents and/or estoppes Defendants from relying on any alleged exemptions from California's usury law.

H.      That the First YCW Loan is void ab initio as criminally usurious and, therefore, Defendants are precluded from recovering any remaining installments due under the loans and must repay all payments made to date and that all documents and collateral be cancelled and surrendered.

/ / /

/ / /

/ / /

## SECOND CLAIM FOR RELIEF

(Declaratory Relief Nature of Transaction, Validity, Priority, Amount, and Extent of Lien –
Second YCW Loan)

40.     Plaintiffs hereby incorporate by reference paragraphs 1 through 39, inclusive, as
fully set forth herein.

41.     The issues with the Second YCW Loan are numerous and include, without
limitation:

A.     Although, the transaction was proposed by Defendants as a loan, the
documentation attempts to picture the transaction as an alleged 'sale' of a portion of a
company's future 'receipts';

B.     There was no transfer of title or transfer of possession to any alleged 'receipts';

C.     The payments are made on a daily basis in the same amount regardless of the
'receipts' or 'proceeds' for that day;

D.     Defendants did not assume any of the ordinary risks of loss that comes with
ownership.

E.     The loan includes an alleged 'broad form' security agreement that is inconsistent
with ownership of any alleged 'receipts;

F.     The loan included an alleged guaranty that is inconsistent with ownership of any
alleged 'receipts;

G.     The loan required Plaintiff to make payments to YCW regardless of the amount
of any alleged 'receipts' and makes the transaction an alleged 'full recourse' loan.

H.     The loan documents use the term loan and are inconsistent with an alleged sale of
'receipts';

I.     The default provision in the loan document makes non-payment a default which
is inconsistent with an alleged sale of 'receipts';

J.    The loan documents do not attempt to separate the alleged portion of the borrower's 'receipts' or 'proceeds' that supposedly belongs to YCW and there is no separate bank account for the alleged 'receipts" belonging to YCW;

K.    The loan is usurious under California law and the high costs of the loan caused the balance transferred to Plaintiff to substantially less than the amount promised;

L.    The fraudulent nature of the loans, the false, misleading, and/or deceptive statements regarding the loans, the omission of material information about the loans, the contradictory documentation, the failure to state and provide for an actual interest rate in the documentation, the other violations of California Finance Lender Law, and the attempt to cast the transaction as a sale or transfer of 'receipts' prevents and/or estoppes Defendants from relying on any alleged exemptions from California's usury law;

M.    The loan documentation and funding were provided with no real opportunity for review or negotiation – i.e. are contracts of adhesion;  and

N.    The business and accounting records of both Plaintiff and YCW treated the transaction as a loan under the standards of the Financial Accounting Standards Board.

42.    Plaintiff contends that the transaction was actually a loan; that the loan was usurious under either California law; that the payments under the transactions were avoidable preferences and/or fraudulent transfers.  Plaintiff further contends that it did not "sell" any assets to YCW, and that it merely borrowed money from YCW.  Plaintiff finally contends that YCW is at best an unsecured general creditor of Plaintiff.

43.    Plaintiff is informed and believes that Defendants dispute Plaintiff's contentions set forth above and Plaintiff desires a judicial determination of its rights and duties and a declaration as to the nature of the transaction, and the parties' rights and duties thereunder.

44. A judicial declaration is necessary and appropriate at this time under the circumstances in order to determine the rights and duties of the parties relating to the Second YCW Loan as follows:

A. That the agreement entered into between Plaintiffs and Defendants sets forth a loan transaction to which California laws are applicable.

B. That the Second YCW Loan charges a usurious interest rate.

C. That Plaintiff and YCW entered into a loan transaction and that YCW does not own and has not acquired any alleged 'receipts' and/or or any other personal property from Plaintiff.

D. That Defendants knowingly charged a usurious rate of interest on the Second YCW Loan and entered into the loans with usurious intent.

E. That the Second YCW Loan is usurious per se.

F. That the Second YCW Loan and the payments thereon are avoidable preferences and/or fraudulent transfers under the Bankruptcy Code.

G. That the fraudulent nature of the Second YCW Loan, the false, misleading, and/or deceptive statements regarding the loan, the omission of material information about the loan, the contradictory documentation, the failure to state and provide for an actual interest rate in the documentation, the other violations of California Finance Lender Law, and the attempt to cast the transaction as a sale or transfer of 'receipts' prevents and/or estoppes Defendants from relying on any alleged exemptions from California's usury law.

H. That the Second YCW Loan is void ab initio as criminally usurious and, therefore, Defendants are precluded from recovering any remaining installments due under the loans and must repay all payments made to date and that all documents and collateral be cancelled and surrendered.

45. An actual controversy exists between the parties as to the validity, priority, and

extent of the validity, amount, and security on the 2016 Pearl Loan.

46.     YCW did not file a valid UCC Financing Statement against Plaintiff and did not have the right to file a UCC Financing Statement against Plaintiff since it did not grant any security to Pearl.

47.     Plaintiff is entitled to a determination pursuant to 11 U.S.C. §506 of the validity, priority, amount, and extent of the alleged security interest with regard to the Second YCW Loan.

48.     Plaintiff further requests that to the extent a secured claim is avoided, the amount of the claim in excess of any allowed secured claim be preserved for the benefit of unsecured creditors pursuant to 11 U.S.C. Section 551.

### THIRD CLAIM FOR RELIEF
(Avoidance of Preferential Transfers against Defendant YCW)
(11 USC Section 547)

49.     Plaintiffs hereby incorporate by reference paragraphs 1 through 48, inclusive, as if fully set forth herein.

50.     YCW made or received transfers in an amount to be proven of Plaintiffs' assets for or on account of antecedent debt claimed to be owed by Plaintiffs to YCW within 90 days of the date of the filing of Plaintiff's Bankruptcy case.  Plaintiffs are informed and believe and thereupon allege that YCW improved its position vis-à-vis Plaintiffs in an amount in excess of $75,000 within 90 days of the filing date.

51.     Such transfers were made at a time when Plaintiffs were insolvent and/or the transfers rendered Plaintiff insolvent

52.     As a result of such transfers, YCW received more than it would have received if (a) Debtors' cases were cases under Chapter 7 of the Code; (b) the transfers had not been made; and (c) YCW received payment of such debt to the extent provided by the Code. The alleged transfers are equally avoidable regardless of whether they are alleged sales of 'proceeds' or loans.

53.    The transfers to Defendants should be avoided pursuant to section 547 of the Bankruptcy Code.

**FOURTH CLAIM FOR RELIEF**
(Avoidance of Lien and Equitable Subordination against Defendant YCW)
(11 U.S.C. Section 510(c))

54.    Plaintiffs hereby incorporate by reference paragraphs 1 through 53, inclusive, as if fully set forth herein.

55.    YCW's claim of debt (approximately $100,000, plus or minus, and subject to proof) are allegedly secured by: (a) a security agreement, or agreements; and (b) an alleged UCC-1 financing statement that allegedly grants a 'broad form security in most if not all of Plaintiff's assets.

56.    The actions of YCW described above have harmed the bankruptcy estate of Debtor and were inequitable and unjust in nature. The alleged transfers are equally avoidable regardless of whether they are alleged sales of 'proceeds' or loans.

57.    As a usurious lender that committed wrongful and illegal acts to unjustly and unduly took advantage of Plaintiff and/or as an alleged purchaser of Plaintiff's assets through fraudulent transfers, YCW's alleged right to payment from Plaintiff's Bankruptcy Estate, if any exists, should be subordinated for purposes of distribution under principles of equitable subordination pursuant to section 510(c)(1) of the Code, and any claims of lien should be avoided and preserved for the benefit of unsecured creditors pursuant to section 510(c)(2) of the Code.

**FIFTH CLAIM FOR RELIEF**
(Avoidance and Preservation of Lien Claims against Defendant YCW)
(11 U.S.C. Sections 502, 506, 544, and 510(c))

58.    Plaintiffs hereby incorporate by reference paragraphs 1 through 57, inclusive, as if fully set forth herein.

59.    Plaintiffs are informed and believe and thereupon allege that YCW's claims are unsecured due to the fact that there are certain superior liens upon Plaintiffs' assets to those of YCW that completely encumber the fair market value of those assets.    As a usurious lender

and/or the transferee in a fraudulent transfer of Plaintiff's assets that committed wrongful and illegal acts to unjustly and unduly took advantage of Plaintiff, YCW's alleged right to payment from Plaintiff's Bankruptcy Estate, if any exists, should be subordinated for purposes of distribution under principles of equitable subordination.

60.    YC's failure to perfect its lien and file a UCC Financing Statement makes its alleged security interest avoidable. The alleged transfers are equally avoidable regardless of whether they are alleged sales of 'proceeds' or loans.

61.    YCW's claim of ownership of any assets belonging to Plaintiff is wrongful and void as set forth above.  The First YCW Loan and the Second YCW Loan and alleged loans and/or purchases and/or payments there-under were avoidable preferences and/or fraudulent transfers. The alleged transfers are equally avoidable regardless of whether they are alleged sales of 'proceeds' or loans.

62.    YCW's liens allegedly securing its subordinated claims and alleged claims of ownership of Plaintiff's assets and the First YCW Loan and the Second YCW Loan should be avoided, preserved and transferred to Plaintiffs' estates pursuant to section 510(c)(2) of the Code.

**SIXTH CLAIM FOR RELIEF**
(Avoidance of Fraudulent Transfers against Defendant YCW)
(11 U.S.C. Section 548)

63.    Plaintiffs hereby incorporate by reference paragraphs 1 through 62, inclusive, as fully set forth herein.

64.    YCW made or received transfers in an amount to be proven of Plaintiffs' assets for less than reasonably equivalent value within 2 years of the date of the filing of Plaintiff's Bankruptcy case.  These transfers include, without limitation, the First YCW Loan and the Second YCW Loan, the alleged security granted under the loans and all payment made there-under and/or the alleged sale of Plaintiff's assets for less than equivalent value.  The alleged transfers are equally avoidable regardless of whether they are alleged sales of 'reciepts', 'proceeds' or loans.

65.    Such transfers were made at a time when Plaintiff was insolvent and/or rendered Plaintiff insolvent.

66.    The transfers to Defendants should be avoided pursuant to Section 548 of the Bankruptcy Code.

**SEVENTH CLAIM FOR RELIEF**
(Avoidance of Fraudulent Transfers against Defendant YCW)
(11 U.S.C. Sections 544 and 548)

67.    Plaintiffs hereby incorporate by reference paragraphs 1 through 66, inclusive, as fully set forth herein.

68.    YCW made or received transfers in an amount to be proven of Plaintiffs' assets for less than reasonably equivalent value within 4 years of the date of the filing of  Plaintiff's Bankruptcy case.   These transfers include, without limitation, the First YCW Loan and the Second YCW Loan, the alleged security granted under the loans and all payment made there-under and/or the alleged sale of Plaintiff's assets for less than equivalent value.   The alleged transfers are equally avoidable regardless of whether they are alleged sales of 'proceeds' or loans.

69.    Such transfers were made at a time when Plaintiff was insolvent and/or rendered Plaintiff insolvent.

70.    The transfers to Defendants should be avoided pursuant to Section 544 and 548 of the Bankruptcy Code.

**EIGHTH CLAIM FOR RELIEF**
(Usury and Unjust Enrichment/Disgorgement against Defendants)

71.    Plaintiffs repeat and re-allege the allegations of each of the foregoing paragraphs 1 through 70 of this Complaint as if fully set forth herein.

72.    Each of the First YCW Loan and the Second YCW Loan set forth a collateralized loan transaction to which California law is applicable.

73.    The loans charge a usurious interest rate exceeding 10%.

74.    The loans charge an interest rate usurious under applicable California law.  The fraudulent nature of the First YCW Loan and Second YCW Loan, the false, misleading, and/or deceptive statements regarding the loans, the omission of material information about the loans, the contradictory documentation, the failure to state and provide for an actual interest rate in the documentation, the other violations of California Finance Lender Law, and the attempt to cast the transaction as a sale or transfer of 'receipts' prevents and/or estoppes Defendants from relying on any alleged exemptions from California's usury law.

75.    Plaintiffs and Defendants intended to enter into a loan transaction for each of the agreements at issue.

76.    The loans are usurious per se.

77.    Defendants were unjustly enriched by receiving payment of principle and interest in connection with the criminally usurious loans.

78.    Equity and public policy dictate that Defendants should not be allowed to receive any amounts paid in connection with the criminally usurious loans.

79.    Plaintiffs seek an order from this Court, declaring the each of the agreements entered into between Plaintiff and Defendants as a loan transaction, and thus, void ab initio under California law because they charge a usurious interest rate; ordering Defendants to repay Plaintiff all principal and interest previously paid by Plaintiff to YCW in connection with the usurious loans; and granting such other and further relief as this Court deems just and proper, including disgorging Defendants of their ill-gotten profits as a result of any and all similarly issued loans to other victims, and be ordered to pay those ill-gotten profits into this Court.

**NINTH CLAIM FOR RELIEF**
(Injunction against Defendants)

80.    Plaintiffs repeat and re-allege the allegations of each of the foregoing paragraphs 1 through 79 of this Complaint as if fully set forth herein.

81.    Plaintiffs are entitled to a permanent injunction enjoining Defendants, or any one acting in concert with them or under their control, from taking any action enforcing the First LCW Loan agreements or the Second LCW Loan agreements or any related document.

82.    Plaintiffs seek an order from this Court, granting a permanent injunction enjoining Defendants and any one acting in concert with them or under their control, from taking any action enforcing the First LCW Loan agreements or the Second LCW Loan agreements or any related document; and vacating any Confession of Judgment and other enforcement mechanisms in connection with the First LCW Loan agreements or the Second LCW Loan agreements; and granting such other and further relief as this Court deems just.

## TENTH CLAIM FOR RELIEF
(Value of Assets and Extent of Lien against Defendant YCW)
(11 U.S.C. Section 502, 506 and 551)

83.    Plaintiffs hereby incorporate by reference paragraphs 1 through 82, inclusive, as fully set forth herein.

84.    The present amount of total alleged secured claimants in Plaintiff's Bankruptcy is in excess of $2,900,000.  Plaintiff is not presently able to determine the alleged amounts, the alleged security, or the alleged priority of a number of the alleged creditors.  There are also about 40 UCC-1 Financing Statements that have been recorded.  There is no evidence of any UCC-1 Financing Statement filed by YCW for the First LCW Loan or the Second LCW Loan.  Plaintiff contends that YCW does not have to file a UCC Financing Statement because the loan document fails to grant any enforceable security to YCW.  As such, any alleged UCC Financing Statement from YCW would be void and of no effect.

85.    Debtor's assets currently consist mostly of its accounts receivable which are currently valued at least at $2,100,000.

86.    As such, Plaintiff contends that YCW has, at best, an unsecured claim.  This

analysis applies even if the transaction was an alleged agreement to sell assets.  The alleged claim would only be an alleged unsecured claim based upon an alleged breach agreement to sell assets.

87.     Plaintiff is entitled to a determination pursuant to 11 U.S.C. §506 of the validity, priority, amount, and extent of the alleged security interest with regard to the 2016 Pearl Loan.

88.     Plaintiff further requests that to the extent the secured claim is avoided, the amount of the claim in excess of any allowed secured claim be preserved for the benefit of unsecured creditors pursuant to 11 U.S.C. Section 551.

### ELEVENTH CLAIM FOR RELIEF
(Disallowance of Claim against Defendant YCW)
(11 U.S.C. Section 502, 506 and 551)

89.     Plaintiffs hereby incorporate by reference paragraphs 1 through 88, inclusive, as fully set forth herein.

90.     The First LCW Loan and the Second LCW Loan documentation included an alleged 'broad form' security agreement.   However, there is no UCC-1 Financing Statement that identifies YCW as the Creditor.   Therefore, any alleged secured claim should be disallowed.

91.     As a usurious lender that committed wrongful and illegal acts to unjustly and unduly took advantage of Plaintiff, YCW's alleged right to payment from this estate should be disallowed pursuant to 11 U.S.C. Section 502 and any allowed secured claim be preserved for the benefit of Plaintiff's Bankruptcy Estate pursuant to 11 U.S.C. Section 551.

### TWELFTH CLAIM FOR RELIEF
(Unconscionability against Defendant YCW)

92.     Plaintiffs hereby incorporate by reference paragraphs 1 through 91, inclusive, as fully set forth herein.

93.     Each of the First YCW Loan and Second YCW Loan agreements entered into between Plaintiffs and Defendants sets forth a collateralized loan transaction to which California usury laws are applicable.

94.     Plaintiffs paid interest in excess of the maximum usury rate of 10% under California law.

95.     The terms of the First YCW Loan and Second YCW Loan agreements are unconscionable as a matter of law.   This is also true if the transactions are alleged sales of 'receipts' or 'proceeds' since, among other issues, the amount paid was grossly inadequate and the alleged enforcement terms are onerous and inadequately emphasizes in the text.

96.     Plaintiff contends that the First YCW Loan and Second YCW Loan are unenforceable and is requesting the Court order that all amounts paid thereon be disgorged to Plaintiff.

### THIRTEENTH CLAIM FOR RELIEF
(California Business & Professions Code Section 17200 et. seq. against Defendants)

97.      Plaintiffs hereby incorporate by reference paragraphs 1 through 96, inclusive, as fully set forth herein.

98.     Defendants' conduct in inducing Plaintiffs to enter into the loans involved a series of transactions that substantially occurred within the State of California.

99.     Defendants' violations of the California Finance Lender Law, Usury law, and fraud, among other wrongful acts, constitutes a per se violation of Section 17200.

100.    Defendants conspired with and acted in concert with each other to violate Section 17200.  Defendants have engaged and continue to engage in unlawful, fraudulent unfair practices, which are substantially likely to mislead the public by violating the California Finance Lender Law by not being licensed in the State of California and purportedly loaning monies to Plaintiffs and by violating California usury law, among other wrongful acts.

101.    The business acts and practices of Defendants are unlawful within the meaning of the Unfair Competition Law in that the conduct of said defendants is unlawful, unfair and/or fraudulent.

102.    The above-described unlawful, unfair and/or fraudulent business practices and unfair competition by Defendants continue to present a threat to Plaintiffs. Plaintiffs are informed and believe that said defendants have systematically perpetrated deceptive and unfair practices upon members of the public and have intentionally deceived Plaintiffs.

103.    The continuance of the aforementioned unlawful conduct constitutes a continuing and ongoing unlawful activity prohibited by Business and Professions Code section 17200 *et seq.* and justifies the issuance of an injunction requiring Defendants to act in accordance with California law. All remedies are cumulative pursuant to Business and Professions Code section 17205.

104.    Pursuant to Business and Professions Code section 17203, Plaintiffs request restitution and/or restitutionary disgorgement all sums obtained by Defendants in violation of Business and Professions Code section 17200 *et seq.* in an amount according to proof including, but not limited to any payments that were made to anything other than principal.

**FOURTEENTH CLAIM FOR RELIEF**
(Fraud against Defendants)

105.    Plaintiffs hereby incorporate by reference paragraphs 1 through 104, inclusive, as if fully set forth herein.

106.    Regarding the First YCW Loan, among other material misrepresentations, Defendants represented as follows:

A.    That they were lenders licensed to make loans in the State of California and the loan was being made pursuant to California laws and regulations;

B.    That the transaction would be a loan of $100,000 which would all be paid to

Plaintiff at the close of the loans;

C.      That the proposed loans would earn interest at less than the legal rate and that the payments could be made from Plaintiff's cash flow without interfering with Plaintiff's ability to do business:

D.      That daily payment amount would not exceed the lower of $1,450 or 7% of Plaintiff's receipts from its accounts receivable for that day;

E.      The interest rate on the loan would not exceed 10% per year and was a legal rate;

F.      Defendants failed to state the actual interest rate on the loan and failed to make federal and state mandated disclosures regarding the loans; and

G.      Defendants represented that the loan complied with all applicable laws.

107.    Regarding the Second YCW Loan, Defendants also represented as follows:

A.      That they were lenders licensed to make loans in the State of California and the loan was being made pursuant to California laws and regulations;

B.      That the transaction would be a loan of $120,000 which would all be paid to Plaintiff at the close of the loans;

C.      That the proposed loans would earn interest at less than the legal rate and that the payments could be made from Plaintiff's cash flow without interfering with Plaintiff's ability to do business:

D.      That daily payment amount would not exceed the lower of $1,500 or 7% of Plaintiff's receipts from its accounts receivable for that day;

E.      The interest rate on the loan would not exceed 10% per year and was a legal rate;

F.      Defendants failed to state the actual interest rate on the loan and failed to make federal and state mandated disclosures regarding the loans; and

G.      Defendants represented that the loan complied with all applicable laws.

108.    Plaintiff relied on these representations and agreed to take out the First YCW

Loan and Second YCW Loan. Plaintiff's reliance was reasonable because Defendants were acting as lenders and/or brokers and claimed to be knowledgeable and experienced regarding lending issues.

109.    The mis-representations and breaches of Defendants and other issues with the First YCW Loan and Second YCW Loan are numerous and include, without limitation:

A.    Although, the transactions was proposed by Defndants as a loan, the documentation attempts to construe the transaction as an alleged 'sale' of a portion of a company's 'receipts';

B.    There was no transfer of title to any alleged 'receipts';

C.    The payments are made on a daily basis in the same amount regardless of the 'receipts' or 'proceeds' for that day;

D.    Defendants did not assume any of the ordinary risks of loss that comes with ownership.

E.    The First YCW Loan and Second YCW Loan included an alleged 'broad form' security agreement that is inconsistent with ownership of any alleged 'receipts;

F.    The First YCW Loan and Second YCW Loan included an alleged guaranty that is inconsistent with ownership of any alleged 'receipts;

G.    The First YCW Loan and Second YCW Loan required Plaintiff to execute an alleged confession of judgment which is inconsistent with ownership of any alleged 'receipts' and makes the transaction an alleged 'full recourse' loan.

H.    The loan documents, in general, are inconsistent with an alleged sale of 'receipts';

I.    The default provision in the loan documents makes non-payment a default which is inconsistent with an alleged sale of 'receipts';

J.    The loan documents do not attempt to separate the alleged portion of the

borrower's 'receipts' or 'proceeds' that supposedly belongs to YCW and there is no separate

bank account for the alleged 'receipts" belonging to YCW;

K.    The First YCW Loan and Second YCW Loan re usurious under California law

and the high costs of the loan caused the balance transferred to Plaintiff to substantially less than

the amount promised;

L.    Defendants do not qualify as a finance lender in California and /or the fraudulent

nature of the First YCW Loan and Second YCW Loan, the false, misleading, and/or deceptive

statements regarding the loans, the omission of material information about the loans, the

contradictory documentation, the failure to state and provide for an actual interest rate in the

documentation, the other violations of California Finance Lender Law, and the attempt to cast

the transaction as a sale or transfer of 'receipts' prevents and/or estoppes Defendants from

relying on any alleged exemptions from California's usury law.  ;

M.    The loan documentation and funding were provided with no real opportunity for

review or negotiation – i.e. are contracts of adhesion; and

N.    The business and accounting records of both Plaintiff and YCW treated the

transaction as a loan under the standards of the Financial Accounting Standards Board.

110.    Defendants were aware that their representations were false at the time they were

made for the purpose of inducing Plaintiff into entering into the First YCW Loan and Second

YCW Loan and were aware that Plaintiff was relying on the representations.

111.    As a proximate result of Defendants' fraudulent and fraudulent acts and

representations, Plaintiff has been damages in an amount in excess of $300,000.

112.    Defendants' actions were intentional and malicious such that exemplary damages

should be awarded in an amount to be proven at trial.

WHEREFORE, Plaintiffs, and each of them, pray for judgment against Defendants, and each of them, as follows:

ON THE FIRST CLAIM FOR RELIEF FOR DECLARATORY RELIEF:

1.   For a judicial declaration regarding the First LCW Loan that:

A.      That the agreement entered into between Plaintiffs and Defendants sets forth a loan transaction to which California laws are applicable.

B.      That the First YCW Loan charges a usurious interest rate.

C.      That Plaintiff and YCW entered into a loan transaction and that YCW does not own and has not acquired any alleged 'receipts' and/or or any other personal property from Plaintiff.

D.      That Defendants knowingly charged a usurious rate of interest on the First YCW Loan and entered into the loans with usurious intent.

E.      That the First YCW Loan is usurious per se.

F.      That the First YCW Loan and the payments thereon are avoidable preferences and/or fraudulent transfers under the Bankruptcy Code.

G.      That the fraudulent nature of the First YCW Loan, the false, misleading, and/or deceptive statements regarding the loan, the omission of material information about the loan, the contradictory documentation, the failure to state and provide for an actual interest rate in the documentation, the other violations of California Finance Lender Law, and the attempt to cast the transaction as a sale or transfer of 'receipts' prevents and/or estoppes Defendants from relying on any alleged exemptions from California's usury law.

H.      That the First YCW Loan is void ab initio as criminally usurious and, therefore, Defendants are precluded from recovering any remaining installments due under the loans and

1  must repay all payments made to date and that all documents and collateral be cancelled and

2  surrendered.

3

4  ON THE SECOND CLAIM FOR RELIEF FOR DECLARATORY RELIEF:

5  1.    For a judicial declaration regarding the Second LCW Loan that:

6  A.    That the agreement entered into between Plaintiffs and Defendants sets forth a

7  loan transaction to which California laws are applicable.

8  B.    That the Second YCW Loan charges a usurious interest rate.

9  C.    That Plaintiff and YCW entered into a loan transaction and that YCW does not

10  own and has not acquired any alleged 'receipts' and/or or any other personal property from

11

12  Plaintiff.

13  D.    That Defendants knowingly charged a usurious rate of interest on the Second

14  YCW Loan and entered into the loans with usurious intent.

15  E.    That the Second YCW Loan is usurious per se.

16  F.    That the Second YCW Loan and the payments thereon are avoidable

17  preferences and/or fraudulent transfers under the Bankruptcy Code.

18

19  G.    That the fraudulent nature of the Second YCW Loan, the false, misleading,

20  and/or deceptive statements regarding the loan, the omission of material information about the

21  loan, the contradictory documentation, the failure to state and provide for an actual interest rate

22  in the documentation, the other violations of California Finance Lender Law, and the attempt to

23  cast the transaction as a sale or transfer of 'receipts' prevents and/or estoppes Defendants from

24  relying on any alleged exemptions from California's usury law.

25  H.    That the Second YCW Loan is void ab initio as criminally usurious and,

26  therefore, Defendants are precluded from recovering any remaining installments due under the

27

28

loans and must repay all payments made to date and that all documents and collateral be cancelled and surrendered.

WHEREFORE, Plaintiffs, and each of them, pray for judgment against Defendants, and each of them, as follows:

ON THE THIRD CLAIM FOR RELIEF FOR AVOIDANCE OF PREFERENTIAL TRANSFERS:

1.      That all transfers from Plaintiff to LCW within 90 days prior to the filing of Plaintiff's Bankruptcy Proceeding be avoided; and

2.      That LCW be ordered to pay back all amounts transferred to it during the 90 days prior to the filing of Plaintiff's Bankruptcy Proceeding be avoided.

ON THE FOURTH CLAIM FOR RELIEF FOR AVOIDANCE OF LIENS AND EQUITABLE SUBORDINATION:

1.      For equitable subordination of LCW's alleged claims;

2.      For preservation of claims, and/or transfer of LCW's alleged liens securing their subordinated claims to Plaintiffs' estate.

ON THE FIFTH CLAIM FOR RELIEF FOR AVOIDANCE AND PRESERVATION OF LIEN CLAIMS:

1.      For avoidance of LCW's alleged liens;

2.      For preservation of claims, and/or transfer of LCW's alleged liens securing their subordinated claims to Plaintiffs' estate.

ON THE SIXTH CLAIM FOR RELIEF FOR AVOIDANCE OF FRAUDULENT TRANSFERS:

1.      For avoidance of the fraudulent transfers made to Defendants within two years of the filing of Plaintiff's Bankruptcy Proceeding.

/ / /

/ / /

ON THE SEVENTH CLAIM FOR RELIEF FOR AVOIDANCE OF FRAUDULENT TRANSFERS:

1.      For avoidance of the fraudulent transfers made to Defendants within four years of the filing of Plaintiff's Bankruptcy Proceeding.

ON THE EIGHTH CLAIM FOR RELIEF FOR USURY AND UNJUST ENRICHMENT/DISGORGEMENT:

1.      For an order declaring that each of the agreements entered into between Plaintiff and Defendant as a loan transaction, and thus, void ab initio under California law because they charge a criminally usurious interest rate in excess of 10%;

2.      An order that Defendant repay Plaintiff all principal and interest previously paid by Plaintiff in connection with the usurious loans;

3.      An order disgorging Defendants of their ill-gotten profits as a result of any and all similarly issued loans to other victims, and be ordered to pay those ill-gotten profits into this Court.

ON THE NINTH CLAIM FOR INJUCTION:

1.      For an order from this Court, granting a permanent injunction enjoining Defendants and any one acting in concert with them or under their control, from taking any action enforcing the First LCW Loan and Second LCW Loan agreements or any related document;

2.      An order vacating any enforcement mechanisms in connection with the First LCW Loan and Second LCW Loan agreements.

ON THE TENTH CLAIM FOR RELIEF FOR VALUATION OF ASSETS AND DETERMINATION OF EXTENT OF LIEN:

1.      For an order declaring the amount of LCW's claim in Plaintiff's Bankruptcy Proceeding, if any;

2.    For an order declaring the value of any alleged security for LCW's claim, if any;

3.    For an order declaring to what extent LCWl's claim in Plaintiff's Bankruptcy Proceeding, if any, is unsecured;

4.    For an order that to the extent LCW's claim is disallowed and/or avoided, the amount disallowed and/or avoided be preserved for the benefit of Plaintiff's Bankruptcy Estate pursuant to 11 U.S.C. Section 551.

ON THE ELEVENTH CLAIM FOR RELIEF FOR DISALLOWANCE OF CLAIM:

1.    For an order disallowing LCW's claim in Plaintiff's Bankruptcy Proceeding;

2.    For an order that to the extent LCW's claim is disallowed, the amount disallowed be preserved for the benefit of Plaintiff's Bankruptcy Estate pursuant to 11 U.S.C. Section 551.

ON THE TWELFTH CLAIM FOR RELIEF FOR UNCONSCIONABILITY:

1.    For an order declaring the First LCW Loan and Second LCW Loan unconscionable and unenforceable;

2.    For an order all amounts paid on the First LCW Loan and Second LCW Loan disgorged to Plaintiff.

ON THE THIRTEENTH CLAIM FOR RELIEF FOR VIOLATION OF CALIFORNIA BUSINESS & PROFFESSIONS CODE SECTION 17200 ET. SEQ.:

1.    For an order that Defendants repay and disgorge all interest and other amounts previously paid to Plaintiffs;

2.    For an order granting a permanent injunction against Defendants restraining them from continuing their unlawful business practices;

1      3.     For an order awarding Plaintiffs their attorney's fees and costs incurred in this

2  action.

3

4  ON THE FOURTHEENTH CLAIM FOR RELIEF FOR FRAUD:

5      1.     For an award of damages against defendants in the amount in excess of

6  $300,000;

7

8      2.     For exemplary damages against Defendants in an amount to be proven at trial;

9  ON ALL CAUSES OF ACTION:

10      1.     For costs of suit incurred herein;

11      2.     For attorneys fees and costs if and as applicable;

12      3.     For prejudgment interest; and

13      4.     For such other and further relief as may be just and proper.

14  DATED: January 10, 2017          LAW OFFICES OF ROBERT M. YASPAN

15

16                      By:_____

17                         ROBERT M. YASPAN
                       JOSEPH G. McCARTY

18                         DEBRA R. BRAND
                       (Proposed) General Counsel for Debtor in
                       Possession/Plaintiff

19

20

21

22

23

24

25

26

27

28